IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RACHEL C.[1],                                             Case No. 6:25-cv-00118-HL

          Plaintiff,                                OPINION AND ORDER

   v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

HALLMAN, Magistrate Judge:

Plaintiff Rachel C. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income under the Social Security Act. (Pl.'s Opening Br. at 2-19, ECF 11). The district

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Having found harmful error in the ALJ's decision at step three, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## PROCEDURAL BACKGROUND

Born in 1988, Plaintiff alleges disability beginning March 15, 2020, due to anxiety, post-traumatic stress disorder ("PTSD"), Depression, Attention Deficit Disorder ("ADD"), her fear of leaving the house, and agoraphobia. Tr. 42-43, 223.[2] Her claim was denied initially and upon reconsideration. On February 1, 2024, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 33-54. On March 13, 2024, the ALJ issued a decision finding Plaintiff not disabled. Tr. 15-26. After the Appeals Council denied her request for review, Plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date. Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: "borderline personality disorder; major depressive disorder versus bipolar disorder; [PTSD] versus panic disorder; and attention-deficit/hyperactivity disorder (ADHD)." *Id*. At step three, the ALJ found Plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 18.

---

[2] Citations to "Tr." Are to the Administrative Record, ECF 8.

Page 2 – OPINION AND ORDER

Because she did not establish a presumptive disability at step three, the ALJ continued to evaluate how Plaintiff's impairments affected her ability to work. The ALJ resolved that Plaintiff had the residual function capacity ("RFC") to perform a full range of work at all exertional levels except:

> [She] can understand, remember, and carry out simple, routine, repetitive tasks with no assembly-line pace work, no more than occasional contact with the general public, and occasional contact with supervisors and coworkers.

Tr. 20.

At step four, the ALJ determined Plaintiff was unable to perform any past relevant work. Tr. 24. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy Plaintiff could perform despite her impairments. Tr. 25.

## DISCUSSION

Plaintiff (1) argues the ALJ erred by finding the medical opinions of Elizabeth Shapiro, LCSW, Nancy Feltner, PMHNP, and Scott Alvord, PsyD, unpersuasive; and (2) contends that the ALJ's discounting of her subjective symptom testimony lacked clear and convincing reasons. Pl.'s Opening Br. at 2.

**(1)    *Elizabeth Shapiro.*** Elizabeth Shapiro, a licensed clinical social worker, is Plaintiff's therapist who has been treating her since April 2020 and sees her once a week for therapy. Tr. 571. In her 2023 opinion, Shapiro diagnosed Plaintiff with PTSD, major depressive disorder, and generalized anxiety disorder. Tr. 571. She based her opinion on Plaintiff's Patient Health Questionnaire-9 ("PHQ-9") and Generalized Anxiety Disorder-7 ("GAD-7") scores, signs of anhedonia, chronic feelings of worthlessness and hopelessness, loss of motivation, impaired concentration, depressed mood, fatigue, suicidal ideation, chronic worry, panic attacks, social isolation, hypervigilance, night terrors, intrusive thoughts and memories from traumatic

Page 3 – OPINION AND ORDER

experiences, irritability, and dissociation. Tr. 572. Shapiro then assessed a mild limitation in Plaintiff's ability to understand and remember simple instructions. *Id*. She assessed a moderate limitation in Plaintiff's ability to carry out simple instructions. *Id*. She assessed a marked limitation in Plaintiff's ability to make judgments on simple work-related decisions. *Id*. Shapiro also assessed a moderate limitation in Plaintiff's ability to respond appropriately to usual work situations and changes in a routine work setting, and a marked limitation in her ability to interact appropriately with the public, supervisors, and coworkers. *Id*. Shapiro concluded that Plaintiff would be off-task at least 15 percent of the workday and absent more than four workdays per month because of her mental health symptoms. Tr. 577-78.

The ALJ did not indicate whether she was persuaded or not by Shapiro but stated that "the assertion of an inability to leave home is inconsistent with the variety of activities the [Plaintiff] engages in outside the home, including frequently driving, working for at least a couple months of the period at issue, and attending in-person classes." Tr. 22, citing Tr. 457-83, 522. The ALJ then stated that "[t]he treatment record does not document conflict with treating sources. Furthermore, many of the comments are presented as based on [Plaintiff]'s report and couched in vague language[.]" Tr. 22. Plaintiff contends that the ALJ's explanation is not supported by or consistent with the record. Pl.'s Opening Br. at 3-7; *see* 20 C.F.R. § 404.1520c (the regulations require ALJs to evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors") (quoting 20 C.F.R. § 404.1520c(b)(2)). The Court agrees.

First, the ALJ's reliance on Plaintiff's "variety of activities" to undermine the consistency Shapiro's medical opinion is overstatement that is unsupported by substantial evidence in the

Page 4 – OPINION AND ORDER

record. The record shows that Plaintiff does not "frequently drive" to the degree alleged in her decision. *See* Tr. 22. Plaintiff has indicated she only has custody of her son three-to-four days out of the week, and on those days, she takes him to preschool. Tr. 37. As it pertains to Plaintiff "working for at least a couple of months of the period at issue[,]" Plaintiff indicated this was unsuccessful and that the job was "overwhelming[,]" that she was often not on time, would call out too often and miss many days, which her employer did not tolerate. Tr. 40-41. Lastly, the ALJ's reliance on Plaintiff attending in-person classes to undermine Shapiro's opinion is another overstatement, as Plaintiff attended *one* art class at Lane Community College for two days a week, three hours each session, and often missed class or avoided eye contact with others during class. Tr. 44-45.

Second, the ALJ's unexplained statement that Shapiro's comments are "couched in vague language" is a mischaracterization of the record. Tr. 22. Shapiro gave several explanations in her opinion that are not vague that the ALJ failed to address, namely that Plaintiff's "current mental health presentation, [her] reports of inability to consistently leave her home, challenges with daily tasks [and] time management, emotional regulation disturbances, exposure to trauma, social anxiety would most likely make any job challenging at this point in time." *Compare* Tr. 22 *with* Tr. 572. Shapiro witnessed Plaintiff's fragile, agoraphobic, anxious, and depressed emotional states, and considered her PHQ-9 test result of 22 (equaling severe depression) and GAD-7 score of 19 (equaling severe anxiety), when forming her opinion. Tr. 548-49, 550, 557-58, 567, 571. Shapiro explained that "[b]ased on [Plaintiff]'s symptomology [and her] reports, an [expectation] of [her] being present full time with minimal absences will most likely also be challenging for [her] to succeed due to the [inconsistency] of her mood, inability to leave her home consistently, her experiences being re-triggered by trauma, [and] all the symptoms that limit her ability to

Page 5 – OPINION AND ORDER

function daily at this time." *Id*. An ALJ's proffered reason for rejecting a plaintiff's credibility is not convincing when it is based on a mischaracterization of the record or a failure to account for the portions of the record that contradict the ALJ's desired conclusion. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ may not develop evidentiary basis of record "by not fully accounting for the context of materials or all parts of the testimony and reports."). Such is the case here, and the Court is unconvinced.

Third, the ALJ's claim that Shapiro recited Plaintiff's own reports is erroneous. Shapiro's discussion of Plaintiff's reports to her is a main function of her role as a therapist. Her answers were "based on [Plaintiff]'s sharing with this clinician as well as what we know of how cognitive functions being impacted by trauma, [and] how anxiety and depression limit functioning." Tr. 575. Thus, the ALJ's refusal to acknowledge that explanation was in error, as the Ninth Circuit holds that in the context of mental illness, "diagnoses will always depend in part on the patient's self-report," and an ALJ may not reject "objective" mental health evidence, such as a clinical interview or mental health evaluation, as a "self-report." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Ultimately, the ALJ failed to provide a meaningful analysis of Shapiro's opinion. The ALJ failed to adequately address the supportability of Shapiro's opinion by overlooking relevant clinical interviews and mental health evaluations. The ALJ also failed to adequately address consistency by narrowly citing Plaintiff's activities of daily living, instead of evaluating Shapiro's opinion against the others in the record. The ALJ has thus erred.

**(2)    *Nancy Feltner.*** Nancy Feltner, a psychiatric-mental health nurse practitioner, is one of Plaintiff's psychiatric providers who mainly provides medication management services. Tr. 532. Feltner has been treating Plaintiff for three-and-a-half years and sees her every three-to-six months,

depending on her emotional status. *Id*. In her 2024 opinion, Feltner diagnosed plaintiff with PTSD with a history of domestic violence, anxiety, personality disorder, ADHD related to PTSD, and homelessness. *Id*. Plaintiff's relevant symptoms include panic attacks, agoraphobia, inability to make appropriate decisions, difficulty with motivation, and sleep disruptions. Tr. 533. Feltner assessed a moderate limitation in Plaintiff's ability to carry out simple instructions and interact appropriately with supervisors and coworkers. Tr. 536. She assessed a marked limitation in Plaintiff's ability to understand and remember simple and complex instructions, make judgments on simple and complex work-related decisions, and interact appropriately with the public. *Id*. She assessed an extreme limitation in Plaintiff's ability to carry out complex instructions and respond appropriately to usual work situations and changes in a routine work setting. *Id*. She concluded that Plaintiff would be off task 15 percent of a workday and would be absent more than four workdays per month due to anxiety, agoraphobia, and fatigue. Tr. 538-39.

The ALJ found Feltner's opinion unpersuasive. Tr. 23. The ALJ found the opinion to be "internally inconsistent" because Feltner checked the box "no" when asked if Plaintiff's ability to interact appropriately with supervision, co-workers, and the public would be affected by her impairments, but then opined that Plaintiff would have marked to extreme social limitations. *Id*., citing Tr. 536. The ALJ then explained that "[t]he assertion that leaving home often triggers panic and PTSD is inconsistent with an individual who cares for a young child, drives, manages her life well enough to handle benefits, and attends college classes." Tr. 23. Lastly, the ALJ indicated that because Feltner only sees Plaintiff every three-to-six months, "[g]reater frequency would be expected for the degree of impairment described. Feltner includes PTSD as a diagnosis, yet their own chart notes do not establish this condition." *Id*., citing Tr. 515-20. Plaintiff again contends that the ALJ's explanation is not supported by or consistent with the record. Pl.'s Opening Br. at

Page 7 – OPINION AND ORDER

8-10; 20 C.F.R. § 404.1520c; *Woods*, 32 F.4th at 792. The Court agrees, particularly because the ALJ failed to weigh this opinion against the others in the record.

Here, the ALJ erred because ALJ's have an obligation to compare a medical opinion with other evidence in the record and "provid[e] an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. Because the ALJ vaguely touched on the issue of consistency by only discussing plaintiff's daily activities, rather than comparing Feltner's opinion to other providers' opinions and other significant treatment records, the Court declines to speculate as to what findings support the ALJ's conclusion that the opinion of Feltner was "consistent" with those of other medical sources. Consequently, the Court is unable to find the ALJ properly discussed the consistency factor. *See Woods*, 32 F.4th at 792 (the factor addresses "the extent to which a medical opinion is consistent with the evidence from other medical and nonmedical sources") (internal quotation marks omitted, emphasis added). This is particularly evident because the Court already found error in the ALJ's use of Plaintiff's activities to discount Shapiro's medical opinion.

Furthermore, the ALJ's discussion of the supportability factor also falls short of the requirements under 20 C.F.R. § 404.1520c. To the extent the ALJ takes issue with the fact that Feltner checked "no" on the form but then gave subsequent responses and narrative explanations otherwise does not indicate that her opinion was "internally inconsistent." Tr. 23. Rather, this demonstrates clerical error. The form indicates that if you answer "no" to question two, move on to question three. Tr. 536. Feltner did not do so, as she purposefully filled out the sub-questions to question two and indicated Plaintiff would have "marked" limitations in interacting appropriately with the public, "moderate" limitations in interacting appropriately with supervisors or coworkers, and an "extreme" limitation in responding appropriately to usual work situations and to changes in routine work settings. *Id*. Therefore, the ALJ's reliance on any internal inconsistencies in

Page 8 – OPINION AND ORDER

Feltner's opinion is not supported by her treatment notes or the record as a whole. In fact, many of Feltner's treatment notes support the marked and extreme limitations she assigned to Plaintiff. *See* Tr. 529-30 (treatment notes showing Feltner's clinical observations of Plaintiff's excessive worry, depressed mood, anhedonia, guilt, decreased energy, decreased concentration, and increased sleep), 523 (treatment note showing acute distress, intense anxiety, and scattered attention), 518-19.

Finally, the ALJ's finding that greater frequency of visitation would be "expected" at a rate higher than every three-to-six months is speculative, and it is well established that an ALJ may not arbitrarily substitute her own judgment for competent medical opinions or make independent medical findings. *Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ may not substitute her own interpretation of the medical evidence for the opinion of medical professionals). Therefore, none of the ALJ's reasons for discounting Feltner's opinion are supported by substantial evidence in the record.

**(3)**    ***Dr. Alvord's Limitations.*** Scott Alvord, a psychologist, met with Plaintiff in January 2024 for a psychodiagnostic consultative examination. Tr. 540. Dr. Alvord based his opinion on Plaintiff's clinical interview, mental status examination, a review of available medical records, Symptom Checklist 90, and the Rey 15 Item Visual Memory Test. *Id*. Dr. Alvord noted that Plaintiff sobbed throughout the examination and that her living environment appeared cluttered and disorganized over telemedicine. Tr. 541-42. He described Plaintiff's mood as "depressed," and he observed a downtrodden and tearful affect. Tr. 542. Current suicidal ideation was endorsed but she denied history of attempts other than self-harm. *Id*. Dr. Alvord noted that her response to mental status items highlighted the possibility of cognitive changes. Tr. 541. Dr. Alvord diagnosed Plaintiff with bipolar II, PTSD, panic disorder, and an unspecified neurocognitive disorder. Tr.

543. He stated, "I suspect a history of hypoxic episodes,[traumatic brain injury] related to domestic violence, and opioid dependence beginning at an early age has contributed to some level of neurocognitive impairment, but testing would be necessary to clarify. Tr. 543. Dr. Alvord gave Plaintiff a "guarded" psychiatric prognosis "given the nature and duration of her symptoms." *Id*. From this, Dr. Alvord assessed that Plaintiff would have marked difficulty in understanding, carrying out, and remembering complex instructions; mild to moderate difficulty in understanding, carrying out, and remembering simple instructions; moderate to marked difficulty sustaining concentration and persisting in work-related activity at a reasonable pace; moderate to marked difficulty maintaining effective social interaction on a consistent and independent basis with supervisors, coworkers, and the public; and moderate to marked difficulty dealing with normal pressures in a competitive work setting. *Id*.

The ALJ found Dr. Alvord's opinion unpersuasive. Tr. 24. As with the other two medical opinions, the ALJ rejected Dr. Alvord's opinion on the ground that Plaintiff's "description of symptoms and not leaving home for days or weeks is inconsistent with the treatment record and hearing testimony." Tr. 24, citing Tr. 515-20. But as previously explained, this line of reasoning falls short of the requirement to evaluate consistency under 20 C.F.R. § 404.1520c. The ALJ also took issue with the fact that Dr. Alvord "appears to base his opinion largely on the brief examination" and that his review of records was limited to 50 pages from the Brookside clinic. Tr. 24. Both additional reasons fail.

First, even if Dr. Alvord did not receive or review all of Plaintiff's medical records, a consultative examiner's opinion may nonetheless constitute substantial evidence where, as here, it rests on an independent examination. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The Ninth Circuit holds that an ALJ may rely on a consultative examiner's opinion when

that opinion is based on an independent examination and consistent with the record as a whole even if the consultative examiner did not review or receive medical records. *See Pacheco v. Berryhill*, 733 F. App'x 356, 359 (9th Cir. 2018) ("Although it is unclear from the record whether Dr. Gist in fact reviewed the records at issue, he did base his opinion on his own examination of Pacheco. As a result, Dr. Gist's opinion constitutes substantial evidence, and the ALJ did not err by relying upon it."); *Castaneda v. Astrue*, 344 F. App'x 396, 398 (9th Cir. 2009) ("Even assuming Dr. Cunningham did not review Castaneda's October 2003 MRI, the ALJ did not err in considering Dr. Cunningham's report. Dr. Cunningham's assessment rested on his own independent examination of Castaneda and was consistent with the record as a whole.")

Second, the fact that Plaintiff visited Dr. Alvord one time is alone an insufficient reason for discounting his opinion. The suggestion that an opinion is inadequate simply because it resulted from a one-time evaluation leads to the conclusion that all examining physician opinions should be discarded. *See Sprout v. Astrue*, No. 1:09-CV-01676 SKO, 2011 WL 300210, at *7 (E.D. Cal. Jan. 27, 2011) ("The suggestion that an opinion is inadequate simply because it resulted from a onetime examination leads to the conclusion that all examining physician opinions should be discarded."). This result is unreasonable, as the Commissioner has often based non-disability decisions on such one-time evaluations. Therefore, the ALJ's rejection of Dr. Alvord's opinion merely because it was based on a one-time evaluation is legally erroneous, as examining doctors who perform one evaluation necessarily assess functioning *only* at the time of the evaluation. In the end, all ALJs must consider the opinions of examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); 20 C.F.R. § 416.927. Therefore, the ALJ erred in her evaluation of Dr. Alvord's opinion.

**(4)**    ***Subjective Symptom Testimony.*** Plaintiff argues that the ALJ failed to give specific, clear and convincing reasons for discounting her subjective symptom testimony. Pl.'s Opening Br. at 13-19; *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015) (if a claimant provides objective medical evidence of an underlying impairment and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony); 20 C.F.R. § 404.1529. According to Plaintiff, the ALJ's bases for discounting her symptom testimony—inconsistent statements, improvement with treatment, and activities of daily living—were unsupported or failed to account for the entire record. Pl.'s Opening Br. at 16-18. The Court agrees.

**(a)**    **Inconsistent Statements.** The ALJ noted that in January 2021, Plaintiff "stated she was sleeping well and denied fatigue, but then endorsed problems with sleep and energy on the [PHQ-9]." Tr. 21, citing Tr. 389. Next, the ALJ noted that Plaintiff described sleeping too much yet having more energy and being able to do more. *Id*., citing Tr. 423-25. The ALJ also found Plaintiff's claim that "[e]verything is hard" and stressful, and that her anxious, distressed, scattered, and distracted presentation conflicted with the fact that "she had gotten a job and been involved custody proceedings." *Id*., citing Tr. 523-24.

Here, of the three examples the ALJ cited, two of them demonstrated inconsistencies. Namely, the first two inconsistencies regarding Plaintiff's complaints of lack of sleep and too much sleep are inconsistent with her PHQ-9 answers. The third cited example, however, did not clearly show an inconsistency: Plaintiff's testimony that she had a job and was involved in a custody battle was not inconsistent with her claims of stress, anxiety, and distraction. *See* Tr. 40-48 (Plaintiff's testimony describing that her depression and anxiety worsened at work and school, would call out

Page 12 – OPINION AND ORDER

of work often, and would feel overwhelmed), 377, 554, 556, (treatment notes showing Plaintiff's symptomology worsened during custody battle).

In sum, the ALJ identified two discrepancies in Plaintiff's statements about her sleep and fatigue, involving her ability to have energy and "do more." Tr. 21. But these two discrepancies were not of sufficient magnitude to discount Plaintiff's testimony in full. The Ninth Circuit has held that two discrepancies of similar magnitude were insufficient. *See Harris v. Kijakazi*, No. 21-35136, 2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) (holding that two discrepancies in a claimant's testimony, regarding her migraines and use of a cane, were not convincing reasons to discredit her testimony in full). Thus, this reason is not sufficient, by itself, to uphold the ALJ's assessment of Plaintiff's testimony.

**(b)    Improvement with Treatment.** The ALJ cited improvement with treatment as another reason to discount Plaintiff's testimony. The Court is unconvinced. First, the ALJ took issue with Plaintiff's reports of "increased depression and anxiety in early 2023, but that 'medication for anxiety and mood regulation are working well for her' and that she had not needed alprazolam on a regular basis." Tr. 21, citing Tr. 528-29. The ALJ also pointed out that "[a]t several points [Plaintiff] endorsed high levels of depression []or anxiety on the PHQ-9 and [GAD-7] while also indicating she was doing well with medication." Tr. 21, citing Tr. 393, 389-91, 377-80, 528-30. But "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Here, the Court concludes that the ALJ did not adequately take into consideration the waxing and waning of Plaintiff's mental health symptoms.

As the ALJ noted, records document Plaintiff's improved energy in June 2022, when Plaintiff reported doing better. Tr. 21, 423. She felt that she was sleeping too much but also had

Page 13 – OPINION AND ORDER

more energy and was able to do more. Tr. 423. She felt at the time that Vyvanse was working well for her focus, concentration, and overall productivity. Tr. 423. However, any improvement was only temporary, as Plaintiff later reported increased anxiety attacks and presented with excessive worry, depressed mood, anhedonia, guilt, decreased energy, decreased concentration, and increased sleep. Tr. 449-50. Though Plaintiff had started a job in 2023, she felt she had plateaued on her current Vyvanse dose and still presented with excessive worry, depressed mood, anhedonia, guilt, decreased energy, decreased concentration, and increased sleep. Tr. 523-24, 528-29. She demonstrated disorganized thought processes and flight of ideas. Tr. 397, 524-25, 519. Her judgment and insight were fair on multiple occasions. Tr. 397, 557, 387, 375, 429, 451, 530, 525, 519, 566-67. But she had feelings and symptoms of depression, insomnia, agitation, anhedonia, anxiety, and sometimes appeared disheveled. Tr. 397, 557. Further, despite the ALJ's claims that Plaintiff did not need Alprazolam on a regular basis, at the hearing, plaintiff noted the exact opposite—that her anxiety is so severe at times, that she needs Alprazolam to lessen or prevent a panic attack about five times per week. Tr. 48. Plaintiff also explained that she had a "bad reaction" to Wellbutrin while on a higher dose, which induced suicidal thoughts. Tr. 42.

Plaintiff's symptoms "must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id*. "Caution in making such an inference is especially appropriate when no doctor or other medical expert has opined, on the basis of a full review of all relevant records, that a mental health patient is capable of working or is prepared to return to work." *Id*. at 1017-18. Such is the case here, as all of Plaintiff's treatment providers, as well as consultative examiner Dr. Alvord, have opined that Plaintiff would have significant limitations in a typical working environment. *See* Tr. 533-39, 541-43, 575-78. For the foregoing

Page 14 – OPINION AND ORDER

reasons, the Court concludes that improvement with treatment is not a clear and convincing reason supported by substantial evidence for rejecting the severity of plaintiff's symptom testimony.

**(c)**    **Activities of Daily Living.** The last reason the ALJ cited to discount Plaintiff's subjective symptom testimony was that her activities of daily living were inconsistent with her testimony that agoraphobia and panic limit her ability to leave her home. Tr. 21. The Court is unconvinced.

The ALJ stated "[c]ontrary to assertion that agoraphobia and panic significantly limit her ability to leave home, the evidence shows [Plaintiff] going to chiropractic treatments, engaging in work activity, attending college classes, and taking her son to the park and on walks." Tr. 21, citing Tr. 457-83, 522, 33-53. The ALJ then indicated Plaintiff "has a 50 [percent] parenting plan, most recently reporting this consists of three to four days per week. [Plaintiff] testified that she drives four to five times a week, an activity that necessitates leaving home." *Id.*, citing Tr. 541, 565.

As discussed, the ALJ utilized Plaintiff's daily activities, in part, to find unpersuasive all of the medical opinions in the record. And as previously determined, the ALJ's reliance on Plaintiff's driving, parenting, and attendance at classes to discount her limitations is unsupported by the record. The same is true here because Plaintiff's activities were not inconsistent with her statements regarding her mental limitations. *See* Tr. 22, 37, 40-41, 44-45. While the ALJ may have had doubts regarding the severity of Plaintiff's symptoms, she cannot mischaracterize the Plaintiff's testimony and rely on that mischaracterization to reject her credibility. *Garrison*, 759 F.3d at 1016. For the foregoing reasons, the Court finds this is not a clear and convincing reason supported by substantial evidence for rejecting the severity of Plaintiff's symptom testimony.

**(5)**    *Remedy.* Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d

Page 15 – OPINION AND ORDER

1195, 1208 (9th Cir. 2001) (citation omitted). Plaintiff asks the Court to remand for an award of benefits but fails to address all of the requirements. Pl.'s Opening Br. at 19. Because Plaintiff fails to meaningfully address the credit-as-true standard, it is unnecessary for this Court to address whether those requirements are met. *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (discussing credit-as-true standard). Instead, the Court concludes that a remand for further proceedings would serve a useful purpose because there are conflicts and ambiguities in the record that must be resolved by the ALJ. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The Commissioner's decision is reversed, and this case is remanded for further proceedings so that the ALJ can adequately evaluate the medical opinions, reevaluate Plaintiff's testimony, reformulate the RFC if necessary, and seek further VE testimony at step five, if necessary.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Commissioner's decision is REVERSED and this case is REMANDED for further administrative proceedings.

DATED this 10th day of April 2026.

ANDREW HALLMAN
United States Magistrate Judge